# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

KEITH EDMONDS #289-715
        Petitioner               :

        v.                       :      CIVIL ACTION NO. JKB-13-1547

BOBBY SHEARIN, et al.             :
        Respondents

## **MEMORANDUM**

On May 28, 2013,[1] the Clerk received petitioner Keith Edmonds' 28 U.S.C. § 2254 habeas corpus petition attacking his 1999 Maryland judgment of conviction for felony murder and related offenses.[2] ECF No. 1, as supplemented at ECF No. 9. Respondents filed an answer that solely addresses the timeliness of the petition. ECF No. 7. Petitioner was advised of his opportunity to file a reply (ECF No. 8), and has done so. ECF No. 9. The court finds no need for an evidentiary hearing, *see* Rule 8(a), *Rules Governing Section 2254 Cases in the United States District Courts*; *see also* 28 U.S.C. § 2254(e)(2), and for reasons set forth herein shall dismiss the petition as time-barred and decline to issue a certificate of appealability.

Procedural History

On September 1, 1999, a jury sitting in the Circuit Court for Baltimore City convicted petitioner of felony murder, second-degree murder, and related offenses. ECF No. 7-1 and 7-2. On December 9, 1999, the court imposed a sentence of life plus a consecutive forty-year period

---

[1] The petition is dated June 22, 2013. This appears to be an error.

[2] The grounds raised in the petition, as supplemented, include, inter alia, ineffective assistance of trial and appellate counsel, abuse of discretion and error on the part of the trial court, prosecutorial misconduct, use of perjured testimony, and various allegations of due process violations relating to his co-defendant's plea agreement. ECF Nos. 1 and 9. Petitioner alleges that the prosecutor withheld evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963), but provides no information to support this claim in his petition. *See* ECF No. 1, p. 7. In his amended petition, he states that three years after his conviction, he discovered that the "arresting agent and the State were aware" that the surviving victim had identified petitioner's co-defendant as the shooter, but failed to disclose this information in testimony before the grand jury. ECF No. 9, p. 11. As discussed herein, this information is neither "newly discovered," nor sufficient to demonstrate petitioner's entitlement to equitable tolling.

of incarceration. *Id.* On direct appeal[3] petitioner challenged the admission of his co-defendant's testimony, the trial court's questioning of a witness at a pretrial hearing, and the legality of his conviction and sentence for second-degree murder. Petitioner's conviction for second-degree murder was vacated on direct appeal by the Court of Special Appeals of Maryland, but otherwise affirmed in an unreported opinion filed on May 2, 2001. ECF No. 7-3. His request for further review in the Court of Appeals of Maryland was denied on September 14, 2001. ECF No. 7-4.

---

[3] As noted in the appellate opinion, petitioner and Lewis Bailey were charged with first-degree murder, felony murder, attempted murder and related counts for the death of Eric Gardner and the shooting of Rudolph Lyons. The State's theory was that Bailey, petitioner, and Anthony Archer approached three victims intending to steal their jewelry. Petitioner and Archer pulled out guns, and Bailey began to go through the victims' pockets. One or more of the victims, however, was armed, and a gun fight commenced. Both Bailey and petitioner were shot. Petitioner handed Archer his weapon and on the way to the hospital told Bailey to tell police that someone had tried to rob them.

Prior to voir dire, the State offered both defendants a sentence recommendation of life imprisonment with all but 20 years suspended for guilty pleas on the felony murder, handgun and attempted murder charges. The trial judge indicated he would only consider life with service of 15 years, if both defendants agreed to the plea. Bailey agreed to the offer; petitioner did not.

Gary Salmon, petitioner's cellmate at the Baltimore City Detention Center, testified that petitioner admitted his involvement in the shooting. Salmon admitted his hope that his testimony against petitioner would benefit him at his upcoming sentencing on pending charges. An expert testified that petitioner had gunpowder residue on his hands at the time of his arrest.

Lyons, the surviving victim, testified that two of the three robbers who approached him and Gardner were armed. He could not identify petitioner, because he focused on the two who pulled guns on him. Lyons was able to identify Bailey as one of the armed individuals, and testified that Bailey's unidentified friend (not petitioner) was the one who shot him in the eye.

Prior to the testimony of Lyons and the State's gunpowder residue expert, Bailey pled guilty to felony murder, two counts of attempted robbery, and one count of using a handgun in the commission of a crime of violence. In negotiating his plea, Bailey agreed to testify against petitioner and the third gunman, Archer, claiming they had guns but he was unarmed. This testimony contradicted two statements Bailey made to police on the night of the murder in which Bailey denied any involvement in the shooting and said that Edmonds had no gun and committed no crime. Essentially, Bailey's testimony would corroborate the testimony of an eyewitness and Lyons that at least two of the robbers fired weapons, and support the State's theory that petitioner was one of the robbers and one of the shooters that night. In return, Bailey would be sentenced to life with all but 15 years suspended, and 5 years without parole for the handgun charge.

Trial counsel moved to exclude Bailey's testimony on the grounds that such testimony was tainted by Bailey's presence in the courtroom during the bulk of the State's case. The trial court denied the motion because Bailey had been a defendant up until his plea, and thus was not subject to sequestration. Petitioner's counsel elicited Bailey's plea deal on cross-examination and also pointed out the inconsistency between Bailey's statements to police the night of the incident and his testimony at trial. The use of Bailey's testimony was upheld on appeal. ECF No. 7-3.

Petitioner did not seek further review in the Supreme Court of the United States. His judgment became final for direct appeal purposes on December 13, 2001.[4]

On November 8, 2001, petitioner initiated post-conviction relief in the Circuit Court for Baltimore City. ECF No. 7-1 and 7-2. Petitioner claimed he was denied a speedy trial, trial counsel was ineffective, his sentence was illegal, and the commitment record was defective. ECF No. 7-6. The Circuit Court on November 7, 2002, denied post-conviction relief. *Id.* Petitioner's application for leave to appeal the denial of post-conviction relief was summarily denied by the Court of Special Appeals in an unreported opinion filed on July 9, 2003. The mandate issued on August 8, 2003. ECF No. 7-5 and 7-7.

Nearly two years later, on August 2, 2005, petitioner moved to reopen post-conviction proceedings. ECF No. 7-8. No new claims were raised. *Id.* On February 13, 2006, the court denied the motion. Petitioner did not seek review of this ruling. ECF No. 7-1 and 7-8. Petitioner states he filed a writ of habeas corpus in the Circuit Court on July 16, 2012, alleging that trial counsel failed to file a plea on his behalf based on mental incompetence. Petitioner provides no information as to the outcome of that proceeding. ECF No. 9, p. 14; ECF No. 1, p. 5.

The instant petition alleges: ineffective assistance of counsel for failing to fully investigate police files and exculpatory statements made by the victim and failing to notify petitioner before waiving his right to a speedy trial; prosecutorial misconduct in using perjured testimony, failing to produce a handwritten note to the jury, suppressing the testimony and identity of a witness, and entering into a plea agreement with a co-defendant who then testified against petitioner; and a violation of due process where a competency evaluation ordered by the

---

[4] *See* Sup. Ct. Rule 13.1 (petition for certiorari to be filed within 90 days of judgment from which appeal is sought).

trial court was never completed. ECF No. 1, pp. 6-8. Petitioner also invokes *Brady v. Maryland,* 373 U. S. 83 (1963), alleging "the prosecutor withheld information that was produced years after trial, and would amount to newly discovered evidence."[5] *id.,* p. 7. As noted by respondents (ECF No. 7, p. 5, n. 2), most of these claims have not been fully and properly presented in the appropriate state courts.

Standard of Review

A one-year statute of limitations applies to habeas petitions pursuant to 28 U.S.C. § 2244(d). The one-year period begins to run on the date on which the judgment became final by the conclusion of direct review or (if no appeal is taken) upon the expiration of the time for seeking such review. *See* 28 U.S.C. § 2244(d)(1)(A).

Here, the period would have begun to run on December 13, 2001, by which time petitioner already had initiated state post-conviction review. Thus, the limitations period was tolled through August 8, 2003, when the mandate issued by the lower appellate court denying leave to appeal the denial of post-conviction relief issued. Under these facts, the one-year limitations period expired on August 8, 2004.

Petitioner does not argue that he failed to meet the statutory period for seeking federal habeas corpus relief. Instead, he contends that his subsequent attempts to reopen post-conviction proceedings and to pursue state habeas corpus relief were improperly ignored by the state court. To the extent that he relies on a recent Supreme Court opinion, *McQuiggin v. Perkins*, __ U.S. __, 133 S. Ct. 1924, 1933 (2013), as a basis for equitable tolling (ECF No. 9, pp. 10-11), his argument fails.

---

[5] The nature and relevance of such evidence is not provided. Presumably, petitioner is referencing Lyons's testimony that Archer was a shooter, which Lyons provided at Archer's trial some three years after petitioner's conviction.

Pursuant to *McQuiggin,* actual innocence, if proved, will serve as a gateway through which a defendant may pass when such claim otherwise would be barred under the one-year statute of limitations. In other words, a federal habeas court faced with an actual-innocence gateway claim should count unjustifiable delay on a habeas petitioner's part not as an absolute barrier to relief, but as a factor in determining whether actual innocence has been reliably shown, *id.,* 133 S.Ct. at 1030. To take advantage of this gateway, however, a petitioner invoking the miscarriage of justice exception "must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence."[6] *Id.,* 133 S. Ct. at 1925 (citing *Schlup v. Delo,* 513 U.S. 298, 327 (1995)).

Having invoked *McQuiggin,* petitioner states that three years after his conviction petitioner became aware that the victim, Rudolph Lyons, testified in another trial that Anthony Archer was the shooter. ECF No. 9, p. 11. Affording petitioner generous leeway, the court presumes this information resulted in petitioner's August 2, 2005, request that the Circuit Court reopen state post-conviction proceedings. Petitioner has not established a strong argument of "actual innocence."[7] Furthermore, the request to reopen was denied on February 13, 2006, yet the instant petition was filed more than six years later.

Equitable tolling of the limitations period is permitted in limited circumstances. *See* 28 U.S.C. § 2244(d)(2); *Harris v. Hutchinson*, 209 F.3d 325, 330 (4th Cir. 2000) (one-year limitations period subject to equitable tolling); *see also Wall v. Kholi*, 131 S. Ct. 1278, 1283 (2011). In order to be entitled to equitable tolling, petitioner must establish that some wrongful

---

[6] *McQuiggin* notes, "Under *Schlup's* demanding standard, the gateway should open only when a petition presents 'evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error.'" *Id.,* 133 S. Ct. at 1935.

[7] The record shows that at least two of the three assailants were armed; petitioner was admitted to Shock Trauma with a gunshot wound after one or more of the victims returned fire on their assailants; and when arrested at the hospital, petitioner tested positive for gunpowder residue. Given these facts, the court cannot conclude that petitioner did not participate in the crimes for which he stands convicted.

conduct by respondents contributed to the delay in filing and completing state post-conviction review, or that circumstances beyond his control caused the delay. *See Rouse v. Lee*, 339 F.3d 238, 246 (4th Cir. 2003); *Harris v. Hutchinson,* 209 F. 3d at 328. "[A]ny resort to equity must be reserved for those rare instances where . . . it would be unconscionable to enforce the limitation period against the party and gross injustice would result." *Id.*

The record suggests that petitioner repeatedly returned to the state circuit court, raising new grounds for relief each time, in what apparently had become a futile effort to reopen post-conviction proceedings. While this borders on obsession, such persistence does not denote due diligence. Nothing in the record suggests that misconduct by the respondents or some extraordinary circumstance prevented petitioner from promptly filing a federal habeas corpus petition. To the extent delay in filing a federal petition might be attributed to his lack of understanding of the law, unfamiliarity with the law may not be used to justify equitable tolling. *See United States v. Sosa,* 364 F.3d 507, 512 (4th Cir. 2004).

Petitioner has failed to satisfy his burden to demonstrate that equitable tolling is warranted, and his claims for habeas corpus relief are time-barred. For the reasons stated herein, the court will deny and dismiss the petition. A certificate of appealability will not issue because petitioner has not made a "substantial showing of the denial of a constitutional right."[8]

A separate order follows.

April 8, 2014  /s/
Date  James K. Bredar
United States District Judge

---

[8] When a district court dismisses a habeas petition solely on procedural grounds, a certificate of appealability will not issue unless the petitioner can demonstrate both "(1) 'that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right' and (2) 'that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.' " *Rose v. Lee*, 252 F.3d 676, 684 (4th Cir. 2001) (quoting *Slack v. Daniel*, 529 U.S. 473, 484 (2000)). Denial of a certificate of appealability in the district court does not preclude petitioner from requesting a certificate of appealability from the appellate court.